**John D. McMURTRY, et al. Plaintiffs,**

**v.**

**Karney A. BRASFIELD, et al. Defendants.**

**Civ. A. No. 86–1425–A.**

United States District Court, E.D. Virginia, Alexandria Division.

March 4, 1987.

James E.T. Lange, Silver Spring, Md., Jared M. Sonies, Falls Church, Va., for plaintiffs.

Robert E. Scully, Jr., Vienna, Va., for Brasfield, Dargis and Dargis.

Jayson L. Spiegel, Washington, D.C., for Brodsky, Greenblatt & Renehan.

Barry R. Poretz, Fairfax, Va., for Brodsky, Greenblatt & Renehen.

## MEMORANDUM OPINION

CACHERIS, District Judge.

At issue here is whether the civil provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO)[1] apply to personal injuries arising from a domestic dispute. Plaintiffs in their Amended Complaint have brought four claims against five defendants, alleging:

(1) Civil RICO;

(2) Civil Conspiracy;

(3) Intentional Infliction of Emotional Distress; and

(4) Intentional Interference with Family Relations.

Two sets of defendants have filed separate Motions to Dismiss plaintiffs' Amended Complaint. For the reasons set forth below, the Motions to Dismiss are granted as to all defendants and all claims.

### I

Underlying plaintiffs' claims is a long running domestic relations dispute which began in the Montgomery County Circuit Court, Montgomery County, Maryland in 1977. On July 25, 1977, the defendant Karen Dargis was divorced from the plaintiff John McMurtry. McMurtry was awarded custody of their son Kevin, while Karen got custody of their son Christopher. Visitation rights were granted each parent. Defendant Jeffrey Greenblatt represented Karen during the divorce and has continued in that capacity during the ensuing custody disputes. After the divorce, Karen married Duane Dargis, becoming Karen Dargis. Defendant Karney Brasfield is Mrs. Dargis' father. More than a year following the divorce, Karen Dargis left Maryland with her son Christopher to relocate in Corpus Christi, Texas. Since the move to Texas, the parties have been involved in continuing litigation in the Montgomery Circuit Court regarding the issues of visitation, psychotherapy and treatment for Christopher McMurtry.

Plaintiffs allege conspiracy among the defendants to remove Christopher McMurtry from the jurisdiction of the Circuit Court of Montgomery County and to deny Christopher access to his father, his older brother (plaintiff Kevin McMurtry), and his paternal grandmother (plaintiff Virginia McMurtry). In furtherance of this conspiracy, plaintiffs allege defendants committed acts of mail fraud constituting a pattern of racketeering under the RICO statute. The defendants sued are Karney Brasfield, Duane Dargis, Karen Dargis, the law firm of Brodsky, Greenblatt & Renehan, and attorney Jeffrey Greenblatt.

### II

In analyzing this case, the court must begin with the civil RICO claim which alleges a conspiracy to remove Christopher McMurtry from Texas. Plaintiffs allege the following predicate acts of mail fraud, all of which relate to the custody dispute in Montgomery County: (1) the mailing of a psychiatric report containing a material and intentional omission in the form of a deletion made at the direction of defendant Greenblatt; (2) the mailing of a letter to the Circuit Court of Montgomery County and to John McMurtry stating that Dr. Lourie recommended no contact between Chris McMurtry and his father when Lourie's report was actually silent as to that question; and (3) the mailing of an affidavit executed by Karen Dargis stating that her move to Texas had not been made with intent to defraud the Circuit Court of Montgomery County or John McMurtry when in fact that was her intent. Plaintiffs allege that the law firm of Brodsky, Greenblatt & Renehan is the RICO enterprise.

Defendants Brasfield, Dargis and Dargis argue dismissal is warranted in this case because: (1) plaintiffs do not have standing under the civil RICO provisions as they have not been injured in their business or

1. 18 U.S.C. § 1964(c).

property; (2) the complaint fails to allege any predicate acts of mail fraud as the alleged statements were made during pending litigation and therefore are privileged; (3) the complaint fails to allege a pattern of racketeering activity; (4) the plaintiffs failed to allege they suffered an injury as a result of the specific RICO violation; (5) the RICO statute of limitations has expired; (6) the court lacks subject matter jurisdiction over the pendent state law claims; (7) the court lacks personal jurisdiction over Karen Dargis and Duane Dargis for the intentional infliction of emotional distress and the tortious interference claims; and (8) the civil conspiracy and intentional infliction of emotional distress allegations fail to state a claim.

The law firm of Brodsky, Greenblatt & Renehan and defendant Greenblatt argue that dismissal is warranted because: (1) the alleged violations of RICO are barred by the applicable statute of limitations; (2) the complaint fails to state a RICO claim as no mail fraud has been alleged and the defendant Dargis was at liberty to move with Christopher from Maryland to Texas; (3) the letters constituting the alleged mail fraud are privileged and cannot form the basis for mail fraud; (4) the law firm, the alleged enterprise, cannot also be sued for a violation of RICO; (5) venue does not properly lie in this district; and (6) the three pendent state claims fail to state a claim.

### III

Under *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985), a plaintiff seeking civil damages for a RICO violation must allege: "(1) conduct [causing injury to business or property], (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." As set forth below, plaintiffs' Amended Complaint fails on each of these four elements.

*Injury to Business or Property*—The Racketeering Influenced and Corrupt Organizations Act provides at § 1964(c) as follows:

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c).

As a matter of pure statutory language, a plaintiff may only recover under the civil RICO provision if he has been "injured in his business or property by reason of a violation of section 1962 of [the Act]." 18 U.S.C. § 1964(c). As set forth in *Sedima,* "the plaintiff [in a civil RICO suit] only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima,* 105 S.Ct. at 3285–3286.

 Plaintiffs in this case have alleged damages resulting from the removal of Christopher McMurtry to Texas. These injuries are clearly personal in nature and are not injuries to business or property. Indeed, plaintiffs in their pendent state claims seek damages for emotional distress and interference with family relations, conventional claims for personal injury, which arise from the same factual allegations as the RICO claim. Such personal injuries growing out of a domestic relations dispute are not the type of injuries Congress intended to be actionable when it provided that a "person injured in his business or property" by a RICO violation could bring civil suit. A contrary ruling would create the potential for every domestic relations dispute to become a federal civil RICO case.[2] Domestic relations disputes give rise to emotionally charged court cases and many times, as here, are seemingly never

---

2. Adjudication of domestic relations cases in federal court is disfavored. However, the domestic relations exception to federal court jurisdiction does not apply to a claim for intentional infliction of emotional distress arising out of a domestic dispute. *Raftery v. Scott,* 756 F.2d 335, 338 (4th Cir.1985).

ending. Congress simply did not intend personal injuries arising from such disputes to be actionable in passing the civil RICO provision.

While Congress intended the scope of the RICO statute to be liberally construed to serve its broad remedial purpose,[3] such broad construction cannot take place without limits and in disregard of Congressional intent and unambiguous statutory language. A number of courts have held that Congress did not intend the broad sweep of RICO to include actions for personal injuries. As the district court in Massachusetts reasoned in dismissing a RICO claim for loss of consortium:

> Plaintiffs' allegations constitute conventional claims for personal injuries.... Absent a clear statement to the contrary by Congress, it would be inappropriate to infer either that it intended to include personal injury as well as property injury within the ambit of the RICO statute or that it understood property injury to include injury to persons....
>
> If Congress had intended that the rights and remedies established by RICO be available in every personal injury action involving financial loss, it could easily have enacted a statute referring to "injury" generally or have referred expressly to injury to "persons" in addition to injury to "business or property."

*Moore v. Eli Lilly & Co.*, 626 F.Supp. 365, 366–67 (D.Mass.1986).[4] To interpret the RICO statute otherwise would be to read out the language in § 1964(c) indicating a civil action may be brought for injury to "business or property." As the injuries here are personal injuries, the civil RICO provision simply does not apply.

3. *Sedima*, 105 S.Ct. at 3286.

4. *See also, Drake v. B.F. Goodrich Co.*, 782 F.2d 638, 644 (6th Cir.1986) (agreeing with the district court that "personal injury actions [for wrongful death] are not within the ambit of the [RICO] statute"); *Bankers Trust Co. v. Rhoades*, 741 F.2d 511, 515 (2d Cir.1984) *vacated*, — U.S. ——, 105 S.Ct. 3550, 87 L.Ed.2d 673 (1985) ("The requirement that the injury be to the plaintiff's business or property means that the plaintiff must show a proprietary type of damage. For

■ *Racketeering Activity*—Further analysis of the plaintiffs' Amended Complaint reveals they have also not alleged any criminal predicate acts in their RICO claim. Plaintiffs essentially argue that letters and an affidavit sent through the mail in connection with an ongoing custody dispute constitute mail fraud. The court does not feel that Congress intended such action to be encompassed within the mail fraud statute. Such an interpretation would chill the ability of attorneys to adequately and zealously represent their client's interest in pending litigation. As stated by the court in *Spiegel v. Continental Illinois Nat. Bank*, 609 F.Supp. 1083, 1089 (N.D.Ill. 1985), *aff'd*, 790 F.2d 638 (7th Cir.), *cert. denied*, — U.S. ——, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986), in discussing this very issue:

> Congress could not have intended that the mail fraud statute sweep up correspondence between attorneys, dealing at arm's length on behalf of their parties, concerning an issue in pending litigation ... Subjecting the letters in issue to the mail fraud statute would chill an attorney's efforts and duty to represent his or her client in the course of pending litigation. It also would, as it did here, give birth to collateral suits.

The district court in Delaware has similarly ruled that letters sent in pending litigation cannot constitute mail fraud, stating in unequivocal language:

> The Court finds absurd plaintiffs' apparent suggestion that a lawyer's act in posting a letter which states a client's legal position in a dispute can constitute mail fraud. If such were the situation, every dispute in which the parties' counsel exchanged letters could give rise to

example, a person physically injured in a fire whose origin was arson is not given a right to recover for his personal injuries"); *Von Bulow v. Von Bulow*, 634 F.Supp. 1284, 1309 (S.D.N.Y. 1986) ("It is clear that personal injury is not actionable under RICO"); *Campbell v. A.H. Robins Co.*, 615 F.Supp. 496, 501 (W.D.Wisc.1985) ("it is evident to this court, that personal injuries are clearly not injuries to either business or property within the context of this statute").

RICO litigation. Such activity simply is not fraudulent.

*Paul S. Mullin & Associates, Inc. v. Bassett*, 632 F.Supp. 532, 540 (D.Del.1986).

The court feels that the reasoning in *Spiegel* and *Bassett* should be followed in this court. To allow lawyer communication in pending litigation to constitute mail fraud would chill effective representation and would give rise to a number of collateral suits. Congress did not intend that mail fraud statute to sweep so broadly with such detrimental effects on attorney representation and the orderly administration of justice. As no criminal predicate acts have been set forth in plaintiffs' Amended Complaint, plaintiffs have failed to allege any racketeering activity as required under *Sedima*.

*Pattern of Racketeering*—The focal points in determining whether a pattern of racketeering has been alleged are "continuity plus relationship." *Sedima*, 105 S.Ct. at 3285, n. 14 (quoting S.Rep. No. 91–617, p. 158 (1969)). As noted by Judge Williams in *Meadow Ltd. Partnership v. Heritage Sav. & Loan Ass'n.*, 639 F.Supp. 643, 650 (E.D.Va.1986), the purpose of the focus on "continuity plus relationship" is:

> To narrow the "pattern" concept to reach RICO's intended goal—enterprises which utilize similar methods of operation and participants and whose victims are harmed in similar manners by the operation of the particular racket. It is this kind of continuous ongoing enterprise that poses the "threat of continuing criminal activity" and it is this kind of enterprise that civil RICO has as its primary target. *Fleet Management Systems v. Archer-Daniels-Midland Co.*, 627 F.Supp. 550, 559 (D.C.Ill.1986).

■ Here, the alleged scheme had only one purpose (to get Christopher to Texas), one result, and one group of victims. Plaintiffs do not allege that other parties have been defrauded by the acts of the defendants beyond this one scheme. Dismissal is warranted because an ongoing enterprise that poses a continuing threat to victims harmed in a similar manner is not alleged. *Schreiber Distributing Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1399 (9th Cir.1986). What is instead alleged here is one fraud implemented by several fraudulent acts. Such a single isolated scheme without the threat of continuing criminal activity cannot constitute a pattern of racketeering. As stated in *Superior Oil Company v. Fulmer*, 785 F.2d 252, 257 (8th Cir.1986), "[i]t places a real strain on the language to speak of a single fraudulent effort, implemented by several fraudulent acts, as a 'pattern of racketeering activity.'"

■ *RICO Enterprise*—The plaintiffs have also failed to allege the requisite enterprise under *Sedima*. Plaintiffs contend that 18 U.S.C. § 1962(a) has been violated, alleging the legal fees received by Greenblatt were used wholly or in part for investment in or operation of the law firm, the alleged RICO enterprise. (See Amended Complaint, paragraph 20). However, the law firm cannot be both a defendant and the alleged RICO enterprise. *United States v. Computer Sciences Corp.*, 689 F.2d 1181 (4th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). In *Computer Sciences*, Count III of the indictment, charging Computer Sciences Corporation ("CSC") with violation of 18 U.S.C. § 1962(a), was dismissed with prejudice as to CSC. The Fourth Circuit affirmed this dismissal stating:

> There is, however, the remaining problem, restricted to CSC, of whether Congress ever intended, in 18 U.S.C. § 1962, that the statute prohibit activities by a person where the activities are described as occurring with any enterprise when there was identity between the person, on the one hand, and the enterprise, on the other. We conclude that "enterprise" was meant to refer to a being different from, not the same as or part of, the person whose behavior the act was designed to prohibit.... Counts 1 and 3 were properly dismissed, with prejudice, as to CSC.

*Computer Sciences*, 689 F.2d at 1190. *See also, Lopez v. Dean Witter Reynolds, Inc.*,

591 F.Supp. 581 (N.D.Calif.1984) ("Sections 1962(a) and 1962(c) impose liability on the 'person' involved in the illegal activity, not the 'enterprise'.... [I]f an entity is the enterprise, it cannot also be the RICO defendant"). Plaintiffs have therefore failed to allege a proper RICO enterprise. As the Fourth Circuit held in *Computer Sciences*, however, this defect only provides grounds for dismissing the law firm of Brodsky, Greenblatt & Renehan and not the other defendants. *Computer Sciences*, 689 F.2d at 1191.[5]

## IV

Because the plaintiffs have failed to allege a federal RICO claim, the court declines to exercise jurisdiction over the pendent state claims which are brought under the law of Maryland. These Maryland state claims would be better adjudicated in a Maryland state court, not by a federal court sitting in the Commonwealth of Virginia. In addition, the fact that these claims revolve around a domestic relations dispute makes the court cautious of exercising pendent jurisdiction over them. *See generally, United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Because the court declines to exercise pendent jurisdiction, the court does not reach defendants' other arguments for dismissing the state law claims.

For the reasons stated above, the defendants' Motions to Dismiss are granted, and all claims are dismissed as to all defendants.

An appropriate Order shall issue.

---

**5.** The court does not reach the arguments that venue is improper in this district or that the statute of limitations has run as the first three grounds for dismissing the RICO claim are each sufficient standing alone to warrant dismissal and apply to all defendants.