974 F.2d 1149
 RICO Bus.Disp.Guide 8082
 Ronald P. BRADY; Vincent Lombardo; Allen Larson; Erling
Schlak; Karl Schlak; Henry Jessen; Robert W. Brady;
Terrain, Inc., a North Dakota corporation; Gerner, Inc., a
North Dakota corporation; Triple J Farms, Inc., a Wyoming
corporation, Plaintiffs-Appellants,
v.
DAIRY FRESH PRODUCTS CO., a California corporation;
Sylvester Feichtinger; Escondido Valley Poultry
Association; Demler Farms, Inc., a
California corporation,
Defendants-Appellees.
Ronald P. BRADY, an individual; Robert W. Brady, an
individual; Karl R. Schlak, an individual; Terrain, Inc.,
a North Dakota corporation; Erling O. Schlak, an
individual; Gerner, Inc., a North Dakota corporation;
Henry Jessen, an individual; Evelyn Jessen, an individual;
Triple J Farms, a Wyoming corporation; Allen D. Larson, an
individual; Vincent Lombardo, an individual, Plaintiffs-Appellants,
v.
Bennett LITTLE, an individual; Harold O. Wright, an
individual; Dairy Fresh Products Co., a California
corporation; Demler Farms, Inc., a California corporation;
Sylvester Feichtinger, individually and as Trustee of the
Maria Feichtinger Family Trust; The Escondido Poultry
Association, Defendants-Appellees.
 Nos. 89-56023, 90-55507.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 4, 1992.
Decided Sept. 9, 1992.
 
 Richard D. Corona, David A. Perkins, Corona, Balistreri & Ramseyer, San Diego, Cal., for plaintiffs-appellants.
 Thomas D. Schaefer, Lightner, Castro, Schaefer & Schatz, San Diego, Cal., Gerald Lee Bolinger, Santa Ana, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of California.
 Before: WALLACE, Chief Judge, BROWNING and FERGUSON, Circuit Judges.
 WALLACE, Chief Judge:
 
 
 1
 Ronald Brady, Vincent Lombardo, Allen Larson, Erling Schlak, Karl Schlak, Henry Jessen, Evelyn Jessen, Robert Brady, Terrain, Inc., Gerner, Inc., and Triple J Farms, Inc. (the investors) appeal from the district court's summary judgment, subsequent to a certification that there was no just reason for delay under Federal Rule of Civil Procedure 54(b). The district court granted summary judgment on all counts in favor of Dairy Fresh Products Co. (Dairy Fresh), Sylvester Feichtinger, Escondido Valley Poultry Association (Association), and Demler Farms, Inc. (Demler) (collectively defendants). The district court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We are called upon to address issues arising under the Racketeer Influenced and Corrupt Organizations (RICO) statute, including one that has divided sister circuits. We affirm in part and reverse and remand in part.
 
 
 2
 * In 1981, Feichtinger and Rabinoff, co-owners of Dairy Fresh, engaged Little and Bencal, Inc. to market its Campo ranches to investors as tax shelters. Dairy Fresh employed Wright as a vice-president, and one of his duties was "to complete [the] 1982 tax shelters." Little and Rabinoff's plan called for the investors to own the property for five years and then sell the property back to Dairy Fresh. Little and Bencal, Inc. represented that the investors would be entitled to a ten percent investment tax credit and one hundred percent depreciation over five years. The representations proved to be false when the Campo ranch investments were audited by the Internal Revenue Service and the represented tax advantages were disallowed. The basis of the disallowance was the failure to "change the user" of the property.
 
 
 3
 Little and Rabinoff also conceived the started pullet investment plan. Wright, as vice-president, assisted with the program. Under this scheme, the investor was to purchase one-day old chicks (started pullets) from Demler, an entity controlled by Dairy Fresh. Dairy Fresh would then repurchase the birds at the end of a twenty-six week period. The Association provided financing for the investors. Little and Bencal, Inc. represented to various investors that they would be entitled to income tax deductions for related consulting fees and the prepayment of management, feed, and care expenses for the started pullets. Although the contracts called for started pullets, some of the chickens that Demler provided may have been laying hens. The started pullet program tax benefits have not been challenged by the Internal Revenue Service.
 
 
 4
 In January 1984, Little, Wright, Rogers, and Ronald Brady discussed the prospect of purchasing the Dinuba Poppy Farm poultry ranch. Shortly thereafter, Little also revealed an opportunity to purchase Kennebec Breeders, Inc. (Kennebec) with its broiler/breeder bloodline. The Kennebec stock was represented by Little to produce a superior broiler chicken.
 
 
 5
 Little proposed that he and Ronald Brady purchase the Dinuba Poppy Farm as a joint venture, each owning a one-half interest. Little also structured a plan on behalf of the joint venture whereby ten buildings located at the Dinuba Poppy Farm would be sold to tax shelter investors for $150,000 each. Little contemplated that the investors would also purchase $10,000 of stock in Kennebec, which would, at the end of five years, repurchase the investors' stock. Wright was later selected as the president of Kennebec.
 
 
 6
 Brady and Bencal, Inc. eventually executed a "joint venture" agreement. Little told Brady that the only difference between this agreement and earlier drafts was that Bencal, Inc. had been substituted in lieu of Little. Brady believed that "in one form or another," Little had a one-half interest in the Dinuba transaction. Brady purchased approximately twenty-five thousand units of the broiler/breeder stock based on Little's representation that he would do the same. However, in January 1985, Little advised Ronald Brady that he had sold Bencal, Inc. to Wright and divested himself of all interest in the joint venture.
 
 
 7
 The Kennebec broiler chick program was similar to the earlier started pullet program. The Dinuba and Kennebec investments eventually failed.
 
 
 8
 Little also discussed with Ronald Brady the formation of a layer chick venture using King's Valley Farms and a shell corporation, King's Valley Farms, Inc. Brady and Little each agreed to invest in King's Valley Farms, Inc. Brady and Little also agreed to buy a one-third share interest that eventually would be sold to Wright. Later, Wright began to place Dairy Fresh orders with the King's Valley Farms hatchery.
 
 
 9
 The investors filed a twenty-four count complaint against various persons, including the defendants, Wright, and Little. The investors claimed that the defendants, Wright, and Little were liable for violations of the federal securities laws and RICO. The investors also asserted a number of pendent state law claims. The district court granted the defendants' motion for summary judgment on all counts.
 
 
 10
 The investors contend that the district court erred in granting summary judgment against them. We review a summary judgment de novo. Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339 (9th Cir.1989). We must determine "whether, viewing the evidence in a light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court applied the relevant substantive law." Id. at 1339-40.
 
 II
 
 11
 The investors contend that the district court erred by granting the defendants' motion for summary judgment on the RICO count. Their first argument asserts that the defendants were directly liable under RICO.
 
 
 12
 The investors begin with the proposition that the defendants may be held liable for violations of 18 U.S.C. § 1962(a). Under section 1962(a), it is unlawful for a person to use or invest income derived from a pattern of racketeering activity in an enterprise. Under the clear language of this provision, the person who receives and invests the "racketeering" income must have participated as a principal in the racketeering activities. See United States v. Wyatt, 807 F.2d 1480, 1482 (9th Cir.), cert. denied, 484 U.S. 858, 108 S.Ct. 170, 98 L.Ed.2d 124 (1987). There is no evidence to substantiate the claim that any defendant culpably participated as a principal in the alleged racketeering pattern.
 
 
 13
 The investors next contend that the defendants should be held liable for violations of 18 U.S.C. § 1962(c). "A plaintiff in a RICO section 1962(c) case must present proof of four RICO elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sigmond v. Brown, 828 F.2d 8, 8 (9th Cir.1987) (internal quotations omitted). A pattern of racketeering activity does not exist unless there is evidence of two predicate acts. 18 U.S.C. § 1961(5). The investors failed to produce evidence that a defendant committed the two requisite predicate acts. Neither have they presented evidence that a defendant made misrepresentations or otherwise culpably participated in Wright and Little's alleged fraudulent conduct.
 
 
 14
 The investors, however, argue that the defendants should be held liable under RICO because corrupt and fraudulent conduct occurred at managerial levels. The Seventh Circuit, in D & S Auto Parts, Inc. v. Schwartz, 838 F.2d 964 (7th Cir.) (D & S Auto Parts ), cert. denied, 486 U.S. 1061, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988), indicated that there may be situations in which illegal conduct takes place "at such a high level that it may be deemed corporate policy to promote or engage in illegal conduct." Id. at 967 n. 5. The investors argue that liability may be appropriate in this situation under the doctrines of aider and abettor, conspiracy, or controlling person liability. Even assuming that any of these doctrines are applicable under RICO, the alleged culpable involvement of Wright and Little in this fraudulent scheme does not reasonably lead to the conclusion that it was corporate policy to promote or engage in illegal conduct. For such an inference to arise reasonably, the involvement of high level officials in the underlying scheme would have to be much more pervasive. Moreover, the investors have not persuasively argued how the acts of Wright or Little should otherwise establish that the defendants are liable under any theory of aider and abettor, conspiracy, or controlling person liability.
 
 III
 
 15
 Undeterred by failing to demonstrate direct RICO liability, the investors alternatively argue that the district court erred by refusing to hold the defendants indirectly liable under the doctrines of respondeat superior and agency.
 
 A.
 
 16
 The investors begin by asserting the broad proposition that the Supreme Court has liberally interpreted private claims created by other statutes to include respondeat superior and agency responsibility when vicarious liability is consistent with the language and purpose of the statutes. The investors then apply this proposition by arguing that we should hold that the claim created by 18 U.S.C. § 1964(c) encompasses actions based on respondeat superior and agency liability.
 
 
 17
 The doctrine of respondeat superior "can probably be best explained as an outgrowth of the sentiment that it would be unjust to permit an employer to gain from the intelligent cooperation of others without being responsible for the mistakes, the errors of judgment and the frailties of those working under his direction and for his benefit." Petro-Tech, Inc. v. Western Co. of North America, 824 F.2d 1349, 1358 (3d Cir.1987) (Petro-Tech ) (internal quotations omitted). Respondeat superior liability also provides employers with an incentive to monitor employees and deter wrongful conduct. The Third Circuit held in Petro-Tech that the purposes of RICO are furthered by applying the doctrine of respondeat superior because Congress created a private claim under RICO at least in part to compensate victims of racketeering. See id. We follow the Third Circuit and "hold that the doctrine of respondeat superior may be applied under RICO where the structure of the statute does not otherwise forbid it." Id. This approach is consistent with the Supreme Court's admonition that RICO's civil provisions are to be construed liberally to effectuate the statute's "remedial purposes." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 497-98, 105 S.Ct. 3275, 3285-86, 87 L.Ed.2d 346 (1985) (Sedima ) (internal quotations omitted).
 
 
 18
 The defendants, however, argue that RICO is essentially a criminal statute and the application of respondeat superior to this statutory scheme would violate the due process clause. For example, they argue that "[c]riminal law jurisprudence recognizes individual responsibility as the keystone to attribution of culpability." We, however, are not required to decide if the doctrine of respondeat superior may be used to impose criminal liability. Here we decide that the private civil claim created by section 1964(c) is broad enough to encompass respondeat superior and agency liability. Our examination of the substantive provisions of the RICO statute, which apply civilly and criminally, goes no farther than to determine if liability under respondeat superior or agency liability may occur in the civil claim created by section 1964(c). Therefore, the due process strictures placed on criminal statutes do not necessarily apply in this limited context.
 
 
 19
 The defendants also apparently argue that the doctrine of respondeat superior may not be applied in RICO actions because the Supreme Court has previously held that punitive damages may not be awarded against a party who did not knowingly participate in the offense conduct. See Lake Shore & Michigan S. Ry. Co. v. Prentice, 147 U.S. 101, 107, 13 S.Ct. 261, 262, 37 L.Ed. 97 (1893) (Lake Shore ). However, in American Society of Mechanical Engineers Inc. v. Hydrolevel Corp., 456 U.S. 556, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982), the Supreme Court referred to its Lake Shore decision, but rejected a similar argument that an entity should not be held liable for treble damages for violation of the antitrust laws under general agency principles. Id. at 574-76, 102 S.Ct. at 1946-48. We hold that an entity may be liable under section 1964(c) for the acts of the entity's employees under traditional respondeat superior and agency principles, unless the structure or language of RICO's substantive provisions indicate otherwise.
 
 B.
 
 20
 Concluding that respondeat superior and agency principles may apply to a RICO claim gets the investors halfway home. We look next to see if the structure and language of the sections of the RICO statute at issue allow such indirect liability.
 
 
 21
 Several circuits have already addressed this question. There appears to be general agreement that respondeat superior liability is inappropriate under 18 U.S.C. § 1962(c) when the enterprise and person are not distinct. See, e.g., Landry v. Air Line Pilots Ass'n, 901 F.2d 404, 425 (5th Cir.) (Landry ), cert. denied, --- U.S. ----, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990); Petro-Tech, 824 F.2d at 1358-60. These circuits point out that the language of section 1962(c) indicates that a person may not be held directly liable under RICO if the person is also the enterprise. See, e.g., Landry, 901 F.2d at 425; Petro-Tech, 824 F.2d at 1358-59. These circuits then conclude that it would also be inconsistent with the language and purpose of section 1962(c) to allow plaintiffs to circumvent this rule by naming an employee of the enterprise as the person that conducts the affairs of the enterprise and then resorting to the doctrine of respondeat superior. See, e.g., Landry, 901 F.2d at 425; Petro-Tech, 824 F.2d at 1358-60. We are persuaded by these decisions and hold that respondeat superior and agency liability is inappropriate when the person is the RICO enterprise.
 
 
 22
 The more difficult question is whether respondeat superior and agency liability is appropriate when the corporation or other employer is not the enterprise. In this situation, the application of the doctrine of respondeat superior would not upset the enterprise/person distinction in section 1962(c). Therefore, some circuits have concluded that respondeat superior liability may be available when the employer is not the enterprise and the employer receives some benefit from its employee or agent's actions. See Ashland Oil, Inc. v. Arnett, 875 F.2d 1271, 1281 (7th Cir.1989) (Ashland Oil ); Petro-Tech, 824 F.2d at 1360-61.
 
 
 23
 Some Seventh Circuit opinions appear to hold that respondeat superior liability is never appropriate under section 1962(c). See, e.g., SK Hand Tool Corp. v. Dresser Indus., Inc., 852 F.2d 936, 941 (7th Cir.1988) (SK Hand Tool ), cert. denied, 492 U.S. 918, 109 S.Ct. 3241, 106 L.Ed.2d 589 (1989); D & S Auto Parts, 838 F.2d at 966-68. We are less persuaded by these opinions. Indeed, D & S Auto Parts was expressly limited by the Seventh Circuit to situations where the employer is named as the enterprise. See Ashland Oil, 875 F.2d at 1281 (limiting D & S Auto Parts to cases "when a RICO claim is brought against the 'enterprise' itself").
 
 
 24
 We hold that an employer that is benefited by its employee or agent's violations of section 1962(c) may be held liable under the doctrines of respondeat superior and agency when the employer is distinct from the enterprise. Corporations and other employers that have benefited from their employees or agents' RICO violations will be forced to compensate the victims of racketeering activity. Respondeat superior and agency liability will encourage employers to monitor more closely the activities of their employees and agents to ensure that these agents are not involved in racketeering activities. Thus, respondeat superior and agency liability furthers both the compensatory and deterrent goals of the RICO statute. See Petro-Tech, 824 F.2d at 1357-58; Sedima, 473 U.S. at 493, 105 S.Ct. at 3283.
 
 
 25
 We remand the section 1962(c) claim to the district court for a determination of whether the defendants are sufficiently distinct from the enterprise in this case. The district court should also determine whether they received any benefit from the alleged RICO violations of an employee or agent.
 
 
 26
 Turning to section 1962(a), the investors correctly point out that some circuits have concluded that when the corporation is benefited by its employee or agent's RICO violations, respondeat superior liability is also appropriate under this section. See Liquid Air Corp. v. Rogers, 834 F.2d 1297, 1306-07 (7th Cir.1987) (Liquid Air ), cert. denied, 492 U.S. 917, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989); Petro-Tech, 824 F.2d at 1360-61. These courts point out that the text of section 1962(a) does not require that the liable person be distinct from the enterprise. See Liquid Air, 834 F.2d at 1306-07; Petro-Tech, 824 F.2d at 1360-61; cf. Landry, 901 F.2d at 425 (vicarious liability appropriate under section 1962(b) because the person and enterprise need not be distinct).
 
 
 27
 We are aware of isolated Seventh Circuit decisions which indicate that vicarious liability is not appropriate under section 1962(a). See SK Hand Tool, 852 F.2d at 937 n. 1, 941; D & S Auto Parts, 838 F.2d at 966-68. We have discovered no persuasive justification in these decisions' refusal to apply principles of respondeat superior and agency in section 1962(a) actions. Therefore, we follow Petro-Tech and Liquid Air and hold that liability may arise pursuant to section 1962(a) under agency and respondeat superior principles when the individual or entity is benefited by its employee or agent's RICO violations. The corporation or other entity will thus be forced to compensate victims when it is the beneficiary of its employees or agents' racketeering activity, but not when it is merely the victim or prize of the racketeering. See Petro-Tech, 824 F.2d at 1360-61. By giving full effect to RICO's broad net of liability, the doctrines of respondeat superior and agency liability will encourage victims of racketeering to act as private attorneys general and help eradicate racketeering activity. See Sedima, 473 U.S. at 493, 105 S.Ct. at 3283. This will further both the compensatory and deterrent goals of RICO. See id.; Petro-Tech, 824 F.2d at 1357-58.
 
 
 28
 On remand, the district court should determine under section 1962(a) whether the defendants received any benefit from the alleged RICO violations of its employees or agents.
 
 IV
 
 29
 The defendants also argue that even if the doctrines of respondeat superior and agency liability may be applied in RICO actions, the facts of this case do not justify holding the defendants liable for any of the acts committed by its agents under traditional agency principles. The district court should address this question on remand.
 
 
 30
 The defendants also raise the issue of whether RICO's treble damages provision violates the due process clause because RICO does not have the safeguards recognized in Pacific Mutual Life Ins. Co. v. Haslip, --- U.S. ----, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). This issue was not addressed by the district court. Therefore, we leave this question for the consideration of the district court on remand.
 
 
 31
 The remaining issues in this case were addressed in an unpublished disposition. The parties shall bear their own costs on appeal.
 
 
 32
 AFFIRMED IN PART, AND REVERSED AND REMANDED IN PART.