**Larry D. CROWE, et al.**

v.

**James W. SMITH, et al.**

Civ. A. No. 92–2164–M.

United States District Court,
W.D. Louisiana,
Monroe Division.

March 28, 1994.

Joseph R. Ward, Jr. and Lynn H. Frank, Ward & Clesi, New Orleans, LA, for plaintiffs.

Leroy Smith, Jr., Tallulah, LA, James Eugene Mixon, Columbia, LA, Robert S. Rooth, Corinne A. Morrison, James C. Young, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, LA, Anne B. Sobol, Slidell, LA, Susan R. Laporte, Metairie, LA, James W. Berry, Coenen & Berry, Rayville, LA, J. Allen Harvey, Jr., Monroe, LA, Judy L. Burnthorn, Nancy J. Marshall, Deutsch Kerrigan & Stiles, Raymond J. Salassi, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, LA, Kurt D. Engelhardt, Hailey, McNamara, Hall, Larmann & Papale, Metairie, LA, and Colette J. Winston, U.S. Dept. of Justice Torts Branch Civ. Div., Washington, DC, for defendants.

## RULING

NAUMAN S. SCOTT, District Judge.

Before the court are three Fed.R.Civ.P. 12(b)(6) Motions to Dismiss filed on behalf of defendants Robert P. McLeod, Lawson L. Swearingen and David E. Verlander, III (the Law Partners); Johnny E. Dollar; and Kirby O. Price and Elmer G. Noah, II (Price & Noah). These defendants urge the court to dismiss the claims of plaintiffs, Larry D. Crowe, Pioneer Produce Co. and Sue Ellen Silman as the administratix of the succession of Reba Crowe (Crowe), on several identical grounds.

### I. *Factual Background*

This lawsuit arises from a series of land development dealings centering on two properties known as Eagle Bend and Australia

Island. In 1979, Crowe sold 410 acres of land known as the Forrest Tract and put up $700,000.00 in cash as a down payment to buy the 9,000–acre Morrissey Property in Mississippi. The total price of this land was $5.3 million. The Morrissey Family Trust financed the remaining $4.6 million owed on this property with a note payable over 30 years at a 6% rate of interest. This land became known as Eagle Lake Farms. Crowe took out an additional $800,000.00 in loans from the Farmer's Home Administration (FmHA) to develop the property and build 10 homes there.

In 1982, Crowe and James W. "Sonny" Smith became business partners and purchased 4,700 acres of land known as Australia Island from the Nelson Baker Hunt Trust. This property is located partly in Warren County, Mississippi (1,100 acres) and partly in Madison Parish, Louisiana (3,600 acres). The purchase price of this land was $5.2 million. The partners put up $400,000.00 as a cash down payment, borrowed $2.8 million from Deposit Guarantee Bank, and signed a promissory note in the amount of $2. million, made payable to the Hunt Trust. Each partner signed the notes individually and the property was conveyed to them individually.

Troubles began in 1985 when, in an effort to develop Eagle Lake Farms more rapidly, Crowe sought a loan from People's Homestead Federal Bank for Savings (People's). Instead of entering into a loan agreement, however, Crowe entered into a partnership with a wholly-owned subsidiary of People's, Agrarian Development Corporation (Agrarian). People's board of directors approved the partnership in a meeting on March 19, 1985. The Crowe/Agrarian partnership became known as Eagle Bend Development. In that same meeting, the directors also voted to give Russell Hart, the president of People's, control over the operation of Eagle Lake Development. On April 3, 1985, Crowe conveyed Eagle Bend Farms to the Eagle Bend Development partnership.

Under the partnership agreement, People's assumed 50% of the Morrissey loan and 50% of the obligation to FmHA. People's also agreed to pay the sum of $3.5 million to liquidate debts on the property and to create a $1 million capital account to finance future development of the project. In exchange, Crowe transferred to the partnership a 50% interest in his Eagle Lake assets, including the farmland, condominiums, houses, a flying service, and farm equipment.

Crowe alleges that, soon after the formation of the partnership, Russell Hart, the officers and directors of People's, Dollar, the law firm of McLeod, Swearingen, Verlander, Dollar, Price & Noah, and Sonny Smith devised a plan to fraudulently acquire Crowe's interest in Eagle Bend and to squeeze him out of his interest in Australia Island. The defendants' purported scheme involved whipsawing Crowe in a flurry of legal proceedings (including the fraudulent institution of bankruptcy proceedings, liquidation actions, and foreclosure proceedings), starving Crowe for cash, and overpowering Crowe through their greater resources, such as their retainer of attorneys Dollar and Robert McLeod.

We need not detail the complex chronology of events Crowe alleges took place between 1986 and 1990 in furtherance of the defendants' scheme to divest him of his interest in Eagle Bend and Australia Island. Instead, a brief, noncomprehensive listing of the allegations shall suffice. Crowe claims that the defendants [1] ousted him as farm manager; refused to allow Eagle Bend's participation in a U.S. Department of Agriculture farm subsidies program; instituted a fraudulent foreclosure proceeding in West Carroll Parish, claiming that Crowe had used property there to cross-collateralize crop loans taken by the two farm partnerships; created an

---

1. We use the term "defendants" loosely for purposes of this Ruling, not meaning to associate each of the defendants herein with each of the alleged acts. Crowe claims that Dollar is liable for his actions while he served as president for People's, attorney for People's, and president of MLM. Crowe holds the Law Partners and Price & Noah vicariously liable as law partners to Dollar. Crowe maintains that the Directors, except Malcolm Maddox, are liable for their pre-receivership actions while they served as directors of People's, Agrarian, and MLM. Crowe asserts that Maddox is liable for his actions while he served as President and Chief Executive Officer of People's from April 1, 1984 to June 8, 1990.

emergency situation to justify their obtaining Chapter 11 and Chapter 7 bankruptcy orders; refused to pay for the construction of sewers and streets at Eagle Bend, thus preventing the sale of condominiums; forbid the leasing of land to farmers whose rent payments might have covered the note obligations; and demanded his payment, but not that of his partners Smith and Agrarian, of crop loans for Eagle Bend and Australia Island.

Crowe, now claiming he was financially exhausted and unable to continue litigation, entered into a Compromise Agreement with Agrarian. People's incorporated MLM Systems, Inc. which, pursuant to the Compromise Agreement, acquired Crowe's 50% interest in Eagle Bend Development. Crowe claims that People's/Agrarian violated the Compromise Agreement by preventing Crowe from gaining title to an airplane and by failing to obtain his release from the FmHA mortgages on Eagle Bend.

RTC entered the picture on October 19, 1989, when, by order of the Director of the Office of Thrift Supervision (OTS), it was appointed as sole receiver of Old People's. RTC reorganized the bank as People's Homestead Savings, Bank, FSB (New People's). By virtue of a Purchase and Assumption Agreement between New People's and RTC–Receiver, also dated October 19, 1989, New People's acquired the assets and some of the liabilities of RTC–Receiver. By further order of the Director of OTS, RTC was appointed conservator of New People's.

After RTC put Eagle Bend up for sale, Crowe sought to repurchase the property and found financing with a group of Tennessee investors, who submitted a written purchase offer. RTC rejected the offer, ruling that the offer did not meet bidding conditions. On January 25, 1990, Crowe filed suit seeking to enjoin the sale of Eagle Bend. Crowe alleges that RTC attorneys told the court that the property was not for sale; accordingly, the motion for injunctive relief was denied on April 4, 1990. *See Larry*

*Dean Crowe v. Eagle Bend Development, et. al*, No. 90–356 (La.Dist.Ct. 4th 1990). That same day, Sonny Smith purchased Eagle Bend for $10.00 and an assumption of the Morrissey note.

Crowe filed this suit on December 2, 1992, naming 19 separate defendants.[2] The Complaint, as amended, seeks relief for violations of 18 U.S.C. §§ 1962(a), (b), (c) and (d) (civil RICO); sets forth causes of action for fraud, unfair trade practices, intentional infliction of emotional distress, breach of fiduciary duty, tortious interference with contract rights, and breach of contract; asks for a declaration that Mississippi court judgments are null and void; and prays for money damages from the RTC pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et seq.*

## II. The Law Partners' Motion and Those Adopting It by Reference

At last count, defendants have filed ten Rule 12 (b)(6) motions to dismiss and four alternative motions for summary judgment in this matter. Most of these motions refer to and/or adopt by reference arguments submitted by other parties; hence, as we noted in a prior Ruling in this matter, dated February 23, 1994, we are confronted with a virtual Gordian knot comprised of intertwined motions. Said Ruling served to unravel a significant portion of the coil of motions now before us, and this Ruling continues our meticulous task.[3] In particular, this Ruling confronts the Law Partners' Motion to Dismiss in its entirety and the portions of the Dollar and Price & Noah motions adopting it by reference.

The Law Partners challenge Crowe's RICO claims on several grounds. First, they confront the First through Third Claims for Relief by asserting broadly that there can be no vicarious liability for RICO violations under the circumstances alleged by plaintiffs. Movants attack these same claims for relief under the alternative argument that Dollar, for whose actions the Law Partners are held vicariously liable, did not commit and was not

---

**2.** Crowe filed an amended complaint on January 4, 1993, naming Malcolm Maddox as an additional defendant.

**3.** We also issued a Ruling in this matter dated March 22, 1994 denying a Motion to Dismiss filed by the United States of America.

involved in any acts of racketeering. Third, the Law Partners assert that the Second Claim for Relief, which sets forth claims under 18 U.S.C. §§ 1962(c) and (d),·does not adequately plead Dollar's conduct or participation in the affairs of the RICO enterprises. Fourth, the Law Partners contend that the Third Claim for Relief fails to adequately plead the requisite "investment or use" injury under § 1962(a). Finally, movants maintain that the state law claims against them, found in the Fourth Claim for Relief, should be dismissed on various grounds. We address these arguments in the same order below.

### A. Does RICO Allow for Vicarious Liability Under the Circumstances Alleged by Crowe?

Movants challenge Crowe's First through Third Claims for Relief, which allege violations under primary RICO sections 1962(a), (b) and (c), on the grounds that RICO does not allow for imposition of vicarious liability under the circumstances alleged by Crowe. The Law Partners assert that because the instant lawsuit does not "involve an attempt to hold a RICO enterprise vicariously liable for a primary Section 1962(c) violation, and involves primary Section (a) and (b) violations.... the present case involves issues unresolved in the Fifth Circuit." Mot. to Dismiss at 9. We agree that our circuit has yet to pass on the issues of whether vicarious liability may lie under § 1962(a) or whether an organization distinct from the RICO enterprise may be held vicariously liable for the acts of its representatives under § 1962(c). We disagree, however, with the Law Partners' assertion that the issue of the whether vicarious liability may be had under § 1962(b) is yet unresolved in our circuit.

We first address the more difficult of the novel issues here before us—i.e., whether an organization distinct from the RICO enterprise may be held vicariously liable under § 1962(c). The difficulty in this question arises because there is general agreement among the circuits, including the Fifth Circuit, that a RICO person may not be held directly liable under § 1962(c) when it and the RICO enterprise are one and the same. *See, e.g., Landry v. Air Line Pilots Ass'n Int'l AFL–CIO*, 901 F.2d 404, 425 (5th Cir. 1990), *cert. denied*, 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203; *Bishop v. Corbitt Marine Ways, Inc.*, 802 F.2d 122, 122–23 (5th Cir.1986) (cataloging the circuits addressing this issue); *but see United States v. Hartley*, 678 F.2d 961 (11th Cir.1982), *cert. denied*, 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983). The rationale for the rule requiring the RICO person and the RICO enterprise to be distinct under subsection (c) "comes from the language of the statute which deals with a 'person employed by or associated with any enterprise.' 18 U.S.C. § 1962(c). This language shows that Congress intended for the RICO person and the enterprise to be separate entities." *Landry*, 901 F.2d at 425. (internal citations omitted).[4]

■ From this principle that the RICO person and enterprise must be distinct under § 1962(c), three circuits, including our own, have gone on the additional step to "conclude that it would also be inconsistent with the language and purpose of section 1962(c) to allow plaintiffs to circumvent this rule by naming an employee of the enterprise as the person that conducts the affairs of the enterprise and then resorting to the doctrine of respondeat superior." *Brady v. Dairy Fresh Products Co.*, 974 F.2d 1149, 1154 (9th Cir. 1992) (citing *Landry*, 901 F.2d at 425; *Petro–Tech, Inc. v. Western Co. of North America*, 824 F.2d 1349, 1358–60 (3rd Cir.1987)). The more complex issue now before us, which has not yet been addressed by the Fifth Circuit, is whether vicarious liability is appropriate under § 1962(c) when the defendant is not the RICO enterprise. The three circuits which have addressed this precise issue have all answered in the affirmative and we concur with these courts. *Brady*, 974 F.2d at 1155; *Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271,

---

4. 18 U.S.C. § 1962(c) provides:

 It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or partici-

 pate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

1281 (7th Cir.1989); *Petro–Tech*, 824 F.2d at 1361.

We find the Ninth Circuit's opinion in *Brady*, penned by Chief Judge Wallace, to be particularly convincing. There the court recognized that applying the doctrine of respondeat superior and agency liability to a non-enterprise defendant would not run afoul of the requisite enterprise/person distinction in § 1962(c). *Brady*, 974 F.2d at 1154. Moreover, the court noted that holding a company which benefited from the wrongful acts of an agent vicariously liable under § 1962(c) would "encourage employers to monitor more closely the activities of their employees and agents to ensure that these agents are not involved in racketeering activities. Thus, respondeat superior and agency liability furthers both the compensatory and deterrent goals of the RICO statute." *Id.* at 1155 (citing *Petro–Tech*, 824 F.2d at 1357–58; *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 493, 105 S.Ct. 3275, 3283, 87 L.Ed.2d 346 (1985)). We find this reasoning persuasive and resonant with the Supreme Court's and the Fifth Circuit's opinions in this area of RICO. Accordingly, we find that an organization, which is not an alleged RICO enterprise, that derives benefit from its representative's wrongful acts may be held vicariously liable for such acts under § 1962(c).

■ Having resolved the question of whether vicarious liability may be had under § 1962(c), we now turn to whether such secondary liability may be available under §§ 1962(a) and (b). The Fifth Circuit clearly held in *Landry* that an organization which gained benefit from its agent's wrongful acts might be held vicariously liable under § 1962(b). 901 F.2d at 425 (citing *Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1307 (7th Cir.1987)), *cert. denied*, 492 U.S. 917, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989). In reaching this holding, the court relied heavily on the Seventh Circuit's opinion in *Liquid Air*. In fact, *Landry* quotes from a section of *Liquid Air* that deals with the issues of whether indirect liability is available under §§ 1962(a) and (b). The *Landry* opinion omits the subsection (a) portion of the quoted text, as *Landry* only addressed the subsection (b) issue. The full passage notes that "[u]nlike subsection (c), which requires a *relationship* between the 'person' and the 'enterprise' (employer-employee), subsections (a) and (b) require only the *use* of an 'enterprise' by a 'person.'" *Liquid Air*, 834 F.2d at 1307. Thus, the *Landry* court held that "the RICO person and the enterprise need not be distinct for a person to be held liable under subsection (b)" and that a "finding of vicarious liability on the part of an enterprise which derived benefit from its representative's wrongful acts" could be had under § 1962(b). *Landry*, 901 F.2d at 425.

■ Because subsection (a), like subsection (b), does not compel the enterprise/person distinction required under subsection (c),[5] it necessarily follows, then, that vicarious liability is appropriate under § 1962(a). We find, therefore, that the Law Partners, who were partners with Dollar at the time that he performed his allegedly wrongful acts, may be held vicariously liable under §§ 1962(a) or (b) if it is proven that they derived benefit from those acts.

**B. Are Dollar's Acts as Counsel Acts of Racketeering?**

■ Movants challenge the First through Third Claims for Relief under the alternative argument that Dollar's actions while representing his clients (People's, Agrarian and MLM) cannot serve as RICO predicate acts.[6] The Law Partners do not attack the particular alleged predicate acts of mail fraud, bankruptcy fraud and obstruction of justice.[7] In-

---

5. *See, e.g., Liquid Air*, 834 F.2d at 1307. No concerns may be voiced, then, that allowing vicarious liability under § 1962(a) might circumvent a requisite enterprise/person distinction, as is the case in the § 1962(c) context. Moreover, such considerations are not relevant here because the RICO person is in fact distinct from the RICO enterprise.

6. 18 U.S.C. §§ 1962(a), (b) and (c) all contain a "racketeering activity" element. This "'racketeering activity' consists of no more and no less than commission of a predicate act." *Sedima*, 473 U.S. at 495, 105 S.Ct. at 3284. These predicate acts are cataloged in § 1961(1).

7. Crowe sets out Dollar's alleged acts of mail fraud, 18 U.S.C. § 1341, bankruptcy fraud, 11 U.S.C. §§ 101–1330, and obstruction of justice,

stead, they urge us to find (or forge) a broad shield from RICO for attorney advocacy. We find no such shield in the language of RICO or the case law, and we decline to form one of our own making.

The Law Partners bring to our attention five cases where district courts dismissed claims of mail fraud against attorneys.[8] All of these cases dealt with the situation where plaintiffs filed claims of mail fraud against an adverse attorney representing a client in pending litigation or disputes. *McMurtry v. Brasfield*, 654 F.Supp. 1222, 1225 (E.D.Va. 1987); *In re The Dow Co. "Sarabond" Products Liability Litigation*, RICO Bus. Disp.Guide: 1987–88 Transfer Binder, 7256, 7257, 1987 WL 49412 (D.Colo.1987); *Manax v. McNamara*, 660 F.Supp. 657, 660–61 (W.D.Tex.1987); *Paul S. Mullin & Associates, Inc. v. Bassett*, 632 F.Supp. 532, 540 (D.Del.1986); *Spiegel v. Continental Illinois Nat. Bank*, 609 F.Supp. 1083, 1089 (N.D.Ill. 1985). In dismissing these mail fraud claims, these courts voiced the concern that subjecting "the letters in issue to the mail fraud statute would chill an attorney's efforts and duty to represent his or her client in the course of pending litigation." *Spiegel*, 609 F.Supp at 1089. We share these same concerns and feel that these courts reached the correct conclusions.

The court in the leading *Spiegel* case warned, however, that "[n]or should our opinion be read to immunize lawyers who are principals in a fraudulent scheme." 609 F.Supp. at 1089. Here, the defendant attorney, Dollar, is alleged to be a principal in the fraudulent scheme to divest the Crowes of their land holdings. Dollar's alleged actions were not merely those of an attorney representing a client in a pending dispute. Instead, Crowe claims that Dollar was a principal planner and actor in the purported scheme, and his letter-writing and filing of lawsuits against Crowe were all part and parcel of this scheme. His actions more closely resemble those of the attorneys in the cases of *Blake v. Dierdorff*, 856 F.2d 1365 (9th Cir.1988) and *Odesser v. Continental*

*Bank*, 676 F.Supp. 1305 (E.D.Pa.1987) than the actions of the defendant attorneys in the lawsuits mentioned above. In these two cases, the courts found that attorneys acting as principals in fraudulent schemes could be found liable under RICO. *Blake*, 856 F.2d at 1371–72; *Odesser*, 676 F.Supp. at 1311–12. Likewise, we find that Dollar may be sued under RICO for his direct participation in the alleged fraudulent scheme against Crowe.

## C. Do Dollar's Actions Meet the Participation Requirements Under § 1962(c)?

■ The Law Partners next assert that the Second Claim for Relief, which sets forth claims under 18 U.S.C. §§ 1962(c) and (d), does not adequately plead Dollar's conduct or participation in the affairs of the RICO enterprises. This argument arises directly from the language of § 1962(c), which makes it "unlawful for any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...." 18 U.S.C. § 1962(c).

The Supreme Court recently held that in order to " 'conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs' ... one must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. ——, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525 (1993). The Law Partners contend that "the litany of alleged predicate acts that Dollar committed in his capacity as People's, Agrarian's and MLM's counsel and as Movants' former law partner" do not rise to the level of participation in the operation or management of the RICO enterprises—People's, Agrarian and MLM—required under *Reves*. Mot. to Dismiss at 19. Crowe rebuts this position by arguing that Dollar did in fact participate in and exert control over the operation and management of these enterprises.

---

18 U.S.C. § 1503, in Appendices A and B of the Complaint.

**8.** None of these cases address attorney liability under the bankruptcy fraud or obstruction of justice statutes.

This factual dispute reminds us that we should not grant a Rule 12(b)(6) motion to dismiss "[u]nless it appears to a certainty that the plaintiffs can prove no set of facts that would entitle them to relief." *Garrett v. Commonwealth Mortg. Corp. of America*, 938 F.2d 591, 593 (5th Cir.1991). We note that under plausible sets of facts stemming from the general allegations in the Complaint, it could be found that Dollar participated in the operation or management of one of the RICO enterprises. Therefore, we cannot grant the Law Partners' motion to dismiss the Second Claim for Relief.

**D. Does the Complaint State a § 1962(a) Violation?**

 The civil remedies provision of RICO provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor ... and shall recover threefold the damages he sustains...." 18 U.S.C. § 1964(c). The recent Fifth Circuit opinion in *Parker & Parsley Petroleum Co. v. Dresser Indust.*, 972 F.2d 580, 584 (5th Cir.1992) makes clear that "the causal language of section 1964(c) requires that the compensable injury stem from the violation of the RICO section in question, so any injury under section 1962(a) must flow from the use or investment of racketeering income."

The Law Partners assert that the Third Claim for Relief fails to adequately plead the requisite causal relationship under § 1962(a) between Crowe's injuries and the use or investment of racketeering income.[9] Plaintiffs rebut the Law Partners' challenge factually by claiming that they were injured by the use or investment of racketeering income.

Crowe's RICO Case Statement alleges that "Crowe, the Succession, and Pioneer Produce were injured by reason of a 1962(a) violation because the defendants used income

derived from the racketeering activity to operate the enterprise and to maintain the fight against Larry Crowe in state and federal court." RICO Case Statement at 41. Plaintiffs elaborate on this general allegation in their opposition memorandum. They set forth several instances where the defendants, including Dollar, fraudulently took control of assets of Eagle Bend and Australia Island. Crowe alleges that this income, derived from racketeering activity, was then poured back into People's, Agrarian and MLM. Defendants allegedly used these assets as their litigation war chest, funding several fraudulent legal proceedings in order to whipsaw Crowe into submission and take over his remaining assets.

We find that we are faced, as in the preceding section, with a genuine factual dispute. Nonmovants have set forth a plausible set of facts stemming from the general allegations in the RICO Case Statement, under which it could be found that they suffered injury flowing from the use or investment of racketeering income. *See Garrett*, 938 F.2d at 593. We cannot, therefore, grant the Law Partners' motion to dismiss the Third Claim for Relief.

**E. Does the Complaint Set Forth State Law Claims Upon Which Relief May Be Granted?**

The Law Partners assert that Crowe's numerous state law claims against them should be dismissed on several grounds.[10] We address these arguments below.

**1. Crowe's Claims of Fraud, Unfair Trade Practices, Intentional Infliction of Emotional Distress, and Tortious Interference with Contract Rights**

 The Law Partners contend that Crowe's fraud, unfair trade practices, inten-

---

**9.** Section 1962(a) provides, in pertinent part:
It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise

which is engaged in, or the activities which affect, interstate or foreign commerce.

**10.** The Law Partners ask us to dismiss the Fifth and Sixth Claims for Relief as to them. Neither of these claims seek relief from the Law Partners. We need not address, therefore, this portion of the Law Partners' motion.

tional infliction of emotional distress and tortious interference with contract rights claims, as set forth in the Fourth Claim for Relief, should be dismissed as time barred. In our Ruling dated February 23, 1994, we found Crowe's tort claims to be barred by Louisiana's one-year prescriptive period, La.Civ. Code art. 3492, and Crowe's unfair trade practices claims to be precluded by the one-year peremptive limitations period. La.R.S. 51:1409(E). Because Crowe alleges no tortious conduct or unfair trade practices within the year prior to the institution of this lawsuit, and because Crowe offers no opposition to the Law Partners' arguments as to prescription, we dismiss the claims of fraud, unfair trade practices, intentional infliction of emotional distress and tortious interference with contract rights as to the Law Partners.

### 2. Crowe's Claims of Breach of Contract and Fiduciary Duty

The Fourth Claim for Relief also alleges claims of breach of contract and fiduciary duty. In our Ruling dated February 23, 1994, we granted Dollar's motion to dismiss Crowe's breach of contract claim and denied Dollar's motion to dismiss Crowe's breach of fiduciary claim.

 Here, Crowe points to the Compromise Agreement as sufficient to create contractual duties between Dollar and him. As we noted in our prior Ruling, Louisiana law makes clear that agents such as Dollar who negotiate and enter into contracts on behalf of their principals are not individually liable in contract for actions taken within the scope of their authority. *See, e.g., Haskins v. Clary*, 338 So.2d 166, 168 (La.App. 2nd Cir.1976). Therefore, we grant the Law Partners' motion to dismiss Crowe's breach of contract claim.

 As to the fiduciary duty claim, we held in our prior Ruling that Dollar failed to carry his burden under Rule 12(b)(6) to have us dismiss this claim against him. Similarly, we find here that there are certain plausible sets of facts arising from the general allegations in the Complaint under which Dollar might be held liable for breaching a fiduciary duty to Crowe. Therefore, while again stressing that we do not express any opinion

as to the validity of Crowe's breach of fiduciary duty claim against Dollar, we cannot grant the Law Partners' motion to dismiss this claim.

### III. *Conclusion*

Accordingly, the Motion to Dismiss plaintiffs' various RICO claims, filed by the Law Partners, and adopted by reference by Dollar and Price & Noah, is hereby **DENIED.**

The Motion to Dismiss plaintiffs' fraud, unfair trade practices, intentional infliction of emotional distress and tortious interference with contract claims filed by the Law Partners, and adopted by reference by Dollar and Price & Noah, is hereby **GRANTED.**

The Motion to Dismiss plaintiffs' breach of contract claim filed by the Law Partners, and adopted by reference by Dollar and Price & Noah, is hereby **GRANTED.**

The Motion to Dismiss plaintiffs' breach of fiduciary duty claim filed by the Law Partners, and adopted by reference by Dollar and Price & Noah, is hereby **DENIED.**